IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HOUMAN ALLAHVERDI, M.D.

      Plaintiff.

vs.                            No. CV-2005-00491 JB/DJS

REGENTS OF the UNIVERSITY OF
NEW MEXICO; UNIVERSITY OF
NEW MEXICO HOSPITAL; DAVID
WILKS, M.D., PAUL ROTH, M.D.,
SALLY BACHOFER,

      Defendants.

## MOTION FOR ORDER TO COMPEL ANSWERS TO INTERROGATORIES

Comes now the Plaintiff pursuant to Rules 26, 33 and 37 of the Federal Rules of Civil Procedure and requests this Court Order Defendants to completely answer the attached interrogatories.

Plaintiff states as follows:

1. Defendants were served with interrogatories and other discovery on April 11, 2005. See exhibit 1 attached.

2. Plaintiff filed a motion to compel which was granted by the Court.

3. Defendants served their answers pursuant to this Order to Compel on July 25, 2005.

4. Certain of the answers and responses are inadequate and evasive and Plaintiff is requesting the Court to order that complete, adequate answers and responses be provided.

5. On August 11, 2005, Plaintiff sent a letter via facsimile to Defendants' counsel asking them to supplement their answers to Interrogatories No. 1, 5 and 6. See Exhibit 2 attached.

6. As of August 17, 2005, Defendants have not responded to this request.

7. As to Interrogatory No. 1, there is no information concerning what information was provided, the date the information was provided, the manner in which the information was provided and whether there was any request for any action concerning Plaintiff's residency or employment.

8. Defendant should provide a summary of all information that was provided to the committee on November 17, 2003 and December 2, 2003 by any person present whether a committee member or not. These would include according to the answer to the second interrogatories, Dr. Wilks, Dr. Bachofer, Elizabeth Staley and Joe Sparkman. If all information was part of the tape recording, then this question is answered. However if any information proceeded or came after the tape recording, then I need this information. Since there was no tape recording for December 2, 2003, Defendants should provide this information according to their memory.

9. In Defendants' answer to Interrogatory No. 6, there is no mention whether any witness was required to testify under oath or whether the committee required affidavits from any witness.

WHEREFORE, Plaintiffs respectfully requests that the Court enter an Order granting the above motion and awarding attorney fees to Plaintiff under Rule 26 and 37.

Respectfully Submitted,

Steven K. Sanders & Associates, LLC

_____
STEVEN K. SANDERS
Attorney for Plaintiffs
820 Second St., N.W.
Albuquerque, New Mexico 87102
505.243.7170

2

CERTIFICATE OF SERVICE

I hereby certify that I mailed and faxed a copy of the foregoing to opposing counsel of record, Marcia E. Lubar and Mark D. Trujillo, Beall & Bichler, 6715 Acaemy Rd. NE, Albuquerque, NM 87109 – *to 505-828-3900*, this 17th day of August 2005.

*[signature]*
Steven Sanders.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

HOUMAN ALLAHVERDI, M.D.,

Plaintiff,

vs.  No. cv 05-0277 JB/DJS

REGENTS OF THE UNIVERSITY OF
NEW MEXICO; UNIVERSITY OF
NEW MEXICO HOSPITAL; DAVID
WILKS, M.D.; PAUL ROTH, M.D.;
SALLY BACHOFER,

Defendants.

## DEFENDANTS' SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORIES NUMBERS 1, 5, AND 6

COMES NOW, the defendants, by and through undersigned counsel, Beall & Biehler, An Association, (Marcia E. Lubar and Mark D. Trujillo), pursuant to the Court's Memorandum and Opinion dated July 11, 2005, hereby submits its supplemental response to Plaintiff's interrogatories numbers 1, 5, and 6.

**INTERROGATORY NO. 1.** "Identify" by name, job title, address and telephone number each person who contributed or related any information to any Defendant or to any employee or agent of any Defendant, (including any of the named defendants) concerning plaintiff's work performance, competency, allegations of misconduct, claimed use of unacceptable language, claimed failure to accurately and timely check out, or failure to truthfully report matters leading to or contributing to Plaintiff's termination. For each person identified, state as completely as possible what information that person contributed, related or provided, to whom the information



was provided, identifying each and every employee or agent of Defendant to whom the information was provided, the date the information was provided, the manner in which the information was provided (i.e. orally, in person, over the telephone, in writing) and whether that person requested any action concerning the termination Plaintiff's residency or employment be taken and if so what action was requested.

ANSWER:   Defendants adopt and incorporate the information from their initial disclosures and previous response with regard to the listing of names, title and contact information. In addition, Defendants submit the following supplemental information.

1. **Dr. Paul Roth, M.D.**   Dr. Roth was, and currently still is, the Dean of the School of Medicine at the University of New Mexico. As the Dean of the School of Medicine, he served as the deciding official regarding the termination of Plaintiff from the family practice residency program based on the findings and recommendations of the Grievance Committee that met in November/December 2003. Documentation regarding Dr. Roth's decision has previously been provided to the Plaintiff.

2. **Dr. Sally Bachofer, M.D.**   Dr. Bachofer was the program director of family practice residency program at the University of New Mexico. As the program director, Dr. Bachofer counseled the Plaintiff regarding his performance in the program, complaints brought to her attention concerning Plaintiff's conduct and the circumstances surrounding the Plaintiff's two notices of termination from the residency program. Dr. Bachofer served as the chair for the first Family Practice Competency Committee that met on October 21, 2002 when complaints were made against Plaintiff that led to him being placed on "zero-tolerance" probation status. She was responsible for selecting members to participate in the two separate Family Practice Competency Committees (Oct 02 and Apr/May 03). She did not serve as a member on the Family Practice

2

Competency Committee that met on April 2, 2003 and again on May 7, 2003. She did, however, participate as a non-voting member in both Grievance Committees in December 2002 and again in November/December 2003. Dr. Bachofer had several conversations with Plaintiff and served various correspondence to Plaintiff including, a February 20, 2003 agreement for reinstatement in the residency program, which has previously been provided to Plaintiff. Additional meetings, correspondence and/or documents, if any, will be provided at a later date.

3. **Dr. David Wilks, M.D.** – Dr. Wilks was the director of Graduate Medical Education (GME) at the University of New Mexico. Dr. Wilks served as the moderator and non-voting member for both the Grievance Committees that were established to hear Plaintiff's appeal for termination from the family practice residency program. Documentation has previously been provided to Plaintiff. Additional documentation, if any, will be provided at a later date.

4. **Dr. Saverio Sava, M.D.** – Dr. Sava was the director of the continuity clinic and was informed of Plaintiff's termination hearings in order to make arrangements for Plaintiff's absence and scheduling within the clinic. Dr. Sava served on the Family Practice Competency Committee that met on April 2, 2003 and again on May 7, 2003.

5. **Dr. Analice Behnken, M.D.** – Dr. Behnken was director of the newborn nursery rotation and had some concerns regarding Plaintiff's performance, competency and inappropriate language during the period before Plaintiff's first termination hearing. Dr. Behnken made these concerns known to the program director, Dr. Bachofer.

6. **Dr. Joel Yager, M.D.** – Following the first Grievance Committee, and based on the Committee's recommendation, Dr. Yager conducted a psychiatric evaluation on Plaintiff. A copy of such evaluation report was previously provided to the Plaintiff.

7. **Dr. Rebecca Ratcliff, M.D.** – Dr. Ratcliff was a resident at the University of New Mexico and had various conversations with Plaintiff. On one occasion, Plaintiff made derogatory comments to Dr. Ratcliff calling another female employee, Dr. Tiffany Snyder, a "bitch." Dr. Ratcliff made these events known to the program director, Dr. Sally Bachofer and occurred prior to the Plaintiff's first notice of termination.

8. **Dr. William Dodson, M.D.** – Dr. Dodson was the Associate Residency Director of Family Practice and served as a member on the second Family Practice Competency Committee that met on April 2, 2003 and again on May 7, 2003. Along with other members on the Family Practice Competency Committee, he recommended that Plaintiff be terminated from the residency program.

9. **Dr. Martha McGrew, M.D.** – Dr. McGrew was the chair for Family Practice Competency Committee that convened on April 2, 2003 and May 7, 2003. Along with other Committee members, Dr. McGrew recommended that Plaintiff be terminated from the residency program.

10. **Ms. Dolores Garcia** – Ms. Garcia was the family practice senior residency coordinator. She had several conversations with Plaintiff. During the time frame before Plaintiff's first notice of termination, Plaintiff told Ms. Garcia that he was previously enrolled in a residency program in Michigan before coming to the University of New Mexico. He also told her that he was suicidal. Because the Plaintiff's safety was a concern, Ms. Garcia divulged the information she received from Plaintiff to the program director, Dr. Sally Bachofer.

11. **Dr. James Wilterding, M.D.** – Dr. Wilterding was a resident in the program who had conversations with Plaintiff. On one occasion, prior to Plaintiff's first notice of termination, Plaintiff told Dr. Wilterding that he was going to shoot and kill an upper level female resident.

4

Dr. Wilterding provided a written statement that was considered by the first Family Practice Competency Committee regarding the conversation he had with Plaintiff.

12. **Dr. Helen Busby, M.D.** – Dr. Busby was the attending physician for the Intensive Care Unit (ICU) at the VA Hospital. During the period before the Plaintiff's first notice of termination, she had some concerns and observations regarding Plaintiff's performance and conduct and informed the program director, Dr. Bachofer, of such concerns and observations.

13. **Dr. Jaye Swoboda** – Dr. Swoboda was the Medical Director for the New Mexico Monitored Treatment Program and conducted an evaluation of Plaintiff before Plaintiff was reinstated into the family practice residency program following the first Grievance Committee hearing.

14. **Dr. Kerrie Seeger, M.D.** – Dr. Seeger was a faculty member in the family practice residency program. She worked for Dr. Bachofer and was the liaison between her and the Plaintiff. Dr. Seeger was responsible for monitoring Plaintiff when he was placed on probation following his first termination proceedings and reporting back to Dr. Bachofer.

15. **Dr. Warren Heffron** – Dr. Heffron was the academic advisor who provided input of Plaintiff's unsatisfactory patient care to Dr. Bachofer.

16. **Dr. John Trotter, M.D.** – Dr. Trotter interviewed Plaintiff during his second termination proceedings and provided information to Dr. Bachofer regarding Plaintiff's unsatisfactory patient care and conduct.

17. **Dr. Michael Murnik, M.D.** –Following Plaintiff's first Grievance Committee hearing, and subsequent recommendation from the Committee, Dr. Murnik served as a mentor for the Plaintiff while he was placed on probationary status. Furthermore, Dr. Murnik served as a member on the second Family Practice Competency Committee, and along with other members from the Committee, recommended the termination of Plaintiff from the program residency.

18. **Dr. Tiffany Snyder, M.D.** – Dr. Snyder was the chief resident during the period before Plaintiff's first notice of termination. She was the person Plaintiff was referring to as a "bitch" when speaking with Dr. Ratcliff. Later, during the period that led up to Plaintiff's second notice of termination, Dr. Snyder told Dr. Bachofer that Plaintiff had acted out of line regarding patient care and dealings with Becky Thompson, a social worker.

19. **Dr. Teresita McCarty, M.D.** – Dr. McCarty served as a member on the first Family Practice Competency Committee and recommended Plaintiff's termination from the residency program. Dr. McCarty is a psychologist and was included on the Committee by Dr. Bachofer so she could provide input as to whether Plaintiff needed formal assessment.

20. **Dr. Anti-Nelly Soto-Hernandez, M.D.** – Dr. Soto-Hernandez was the chief resident and direct supervisor of Plaintiff when Plaintiff was placed on probation following his first Grievance Committee hearing. Dr. Soto-Hernandez was responsible for assessing Plaintiff's competency including providing evaluations.

21. **Dr. Ed Hepworth** – Dr. Hepworth was the president of the residency association. Dr. Hepworth was Plaintiff's representative when Plaintiff met with Dr. Bachofer to discuss the issue of reinstatement into the family practice residency program, as recommended by the first Grievance Committee.

22. **Dr. Art Kaufman, M.D.** – Dr. Kaufman was the Chair, Department of Family and Community Medicine residency program and served on the first Family Practice Competency Committee. Along with other members, Dr. Kaufman recommended Plaintiff's termination from the residency program.

**23. Dr. Scott Brown, M.D.** – Dr. Brown served on the second Family Practice Competency Committee and along with other members, recommended Plaintiff's termination from the residency program.

**INTERROGATORY NO. 5:** During the past seven years, please state the number of individuals who have been involuntarily terminated from a UNM medical residency program, state the number of individuals who have been involuntarily terminated from a medical residency program for reasons similar to those reasons for terminating Plaintiff. State the reasons why each was terminated from the residency program. If any individual was subsequently reinstated pursuant to a grievance or otherwise, set out in full the reasons why they were reinstated to their residency program and the date of reinstatement. Please explain how each person reinstated differed in their conduct deficiencies or other circumstances from Plaintiff's alleged conduct deficiencies or circumstances.

**ANSWER:** During the past seven years, only one individual has been involuntarily terminated from a UNM medical residency program. No individual has been involuntarily terminated from a medical residency program for reasons similar to those reasons for terminating Plaintiff.

The individual who was involuntarily terminated from a residency program was the subject of a criminal investigation and subsequent criminal charges. No individual has been subsequently reinstated to a residency program pursuant to a grievance or otherwise.

**INTERROGATORY NO. 6:** Please identify each and every voting member of Family Practice Competency Committee and all other individuals which were present for any part of either

7

meeting held on or about April 2, 2003 and/or on May 7, 2003 to discuss Plaintiff's residency and/or to determine whether Plaintiff would be allowed to continue his residency program. For each meeting, please identify each document reviewed and each person that the committee met with, listened to or received information, advice, consultation or evidence from in regard to Plaintiff's continued participation in the residency program and give a summary of the facts and details each person presented to the committee and how that information was presented to the committee, i.e. orally in person or by telephone or tape recording or in writing. Please indicate whether any witness was required to testify under oath or whether the committee required affidavits from any witness. Please identify all persons present for any portion of either meeting and identify the chair of each meeting.

**ANSWER:** Individuals who served as voting members, at the April 2, 2003 and May 7, 2003 Family Practice Competency Committee meeting were the following: Dr. Martha McGrew, M.D. (chair), Dr. William Dodson, M.D., Dr. John Leggott, M.D., Dr. Scott Brown, M.D., Dr. Michael Murnik, M.D., and Dr. Saverio Sava, M.D.

Dr. Martha McGrew, M.D. served as the chair for both the April 2, 2003 and May 7, 2003 meetings.

The Family Practice Competency Committee met on the above-mentioned dates to discuss Plaintiff's residency performance, competency and to recommend whether Plaintiff would be allowed to continue in the residency program. Committee members reviewed the Plaintiff's residency personnel folder, which consisted of Plaintiff's application to the UNM residency program, documents from Plaintiff's monitor treatment program, written statement from social worker Ms. Becky Thompson and Plaintiff's rotation evaluations/reports. The Committee also reviewed documents from Plaintiff's prior December 2002 disciplinary action.

which yielded Plaintiff being placed on probation. A copy of these documents were previously provided to the Plaintiff.

No other individuals participated, or provided testimony to the Committee on April 2, 2003 or May 7, 2003.

Respectfully Submitted,

BEALL & BIEHLER, AN ASSOCIATION

By: _____

MARCIA E. LUBAR
MARK D. TRUJILLO
Attorney for defendants
6715 Academy Road N.E.
Albuquerque, New Mexico 87109
(505) 828-3600
(505) 828-3900 (FAX)

*I hereby certify* that a true and correct copy of the foregoing pleading was mailed to the following counsel of record:

Law Offices of Steven K. Sanders & Associates, LLC
Steven K. Sanders
820 Second Street, NW
Alb. N.M. 87102
Facsimile: 243-7755

on this 25th day of July, 2005.

_____
MARK D. TRUJILLO

# Steven K. Sanders & Associates, L.L.C.
Attorneys at Law
820 Second Street NW
Albuquerque, New Mexico 87102
Phone: 505.243.7170

August 11, 2005

Mark D. Trujillo – *Sent via fax only to: 828-3900*
Beall & Biehler
6715 Academy Rd. NE
Albuquerque, NM 87109

Re:   Houman Allahverdi, MD v. Regents, No. 05-CV 277 JB/DJS

Dear Mr. Trujillo:

I appreciate your letter of August 1, 2005 concerning my previous correspondence. I am requesting that you agree to supplement your answers to Plaintiff's Interrogatories Numbers 1, 5, and 6 served on July 25, 2005. The nature of this request is as follows:

Interrogatory No. 1 reads as follows:

> **INTERROGATORY NO. 1.** "Identify" by name, job title, address and telephone number each person who contributed or related any information to any Defendant or to any employee or agent of any Defendant, (including any of the named defendants) concerning plaintiff's work performance, competency, allegations of misconduct, claimed use of unacceptable language, claimed failure to accurately and timely check out, or failure to truthfully report matters leading to or contributing to Plaintiff's termination. **For each person identified, state as completely as possible what information that person contributed, related or provided, to whom the information was provided, identifying each and every employee or agent of Defendant to whom the information was provided, the date the information was provided, the manner in which the information was provided (i.e. orally, in person, over the telephone, in writing) and whether that person requested any action concerning the termination Plaintiff's residency or employment be taken and if so what action was requested.**
> ANSWER:

I believe that you have responded to the first half of the question, but not to the part of the question in bold print. There is no information concerning what information was provided, the date the information was provided, the manner in which the information was provided and whether there was any request for any action concerning Plaintiff's residency or employment.

D:\wordprocessing\Allahverdi\Discovery\Lubar&Trujilloletter

EXHIBIT 2

This concern is especially important concerning Dr. Bachofer. You state that complaints were brought to her attention concerning Plaintiff's conduct and the circumstances surrounding the Plaintiff's two notices of termination. However, you do not inform us who provided the information, what information was brought to her attention, the date she received the information, the manner the information was provided and whether there was any request for action against Plaintiff. Further, you do not state what information she provided to the Grievance Committees, nor what she requested in terms of Plaintiff's residency or employment. You also state that she had several conversations with Plaintiff, but do not elaborate on the content of those conversations. If they are relevant to this case, or if you intend to bring them out during trial or in a motion, then the information should be provided either in response to this interrogatory or in response to Interrogatory two (2). Finally, you state that "Additional meetings, correspondence and/or documents, if any, will be provided at a later date." If there are additional matters, I would like to know about it at this time.

I am also concerned about the responses concerning David Wilks, Saverio Sava, William Dodson, Martha McGew, Scott Brown and Art Kaufmann in relation to information that was presented to them since the meetings were not tape-recorded and there is no record.

I am also concerned about the response concerning Analice Behnken because her "concerns regarding Plaintiff's performance, competency and inappropriate language" are not specified nor when she expressed these concerns nor what action if any she requested concerning Plaintiff's residency.

If the "concerns and observations" that Dr. Busby related to Dr. Bachofer are to be raised at trial, I would like to know what they are and how they were documented and what actions she requested concerning Plaintiff's residency.

I would like a copy of the evaluation of Jaye Swoboda.

I would like to know what information Dr. Seeger provided to Dr. Bachofer concerning her monitoring of Plaintiff.

I would like to know what information Dr. Heffron and Dr. Trotter provided to Dr. Bachofer, when it was provided and whether he requested any action against Plaintiff.

I would like to know what information Dr. Murnik provided to the Grievance Committee and what he observed as a mentor for Plaintiff, again especially if it will be the subject of testimony or a motion.

I would like to know what Dr. Snyder told Dr. Bachofer concerning Plaintiff acting "out of line concerning patient care and dealings with Becky Thompson..."

I would like to know what the assessment of Dr. Soto-Hernandez was concerning Plaintiff if it was considered by the committee or provided to Dr. Bachofer or will be the subject of testimony.

Finally, based upon your answers to Plaintiff's second interrogatories, I would like a summary of all information that was provided to the committee on November 17, 2003 and December 2, 2003 by any person present whether a committee member or not. These would include according to your answer to the second interrogatories, Dr. Wilks, Dr. Bachofer, Elizabeth Staley and Joe Sparkman. If all information was part of the tape recording, then this question is answered. However if any information proceeded or came after the tape recording, then I need this information. Since there was no tape recording for December 2, 2003. I request this information from the named Defendants according to their memory.

Again, I request the information that Dr. Murnik provided to the committee at any time.

In answer to Interrogatory No. 6, there is no mention whether any witness was required to testify under oath or whether the committee required affidavits from any witness.

Again, I appreciate your attention to this matter and would appreciate your response as soon as possible since I have only twenty (20) days to file an appropriate motion from July 25, 2005, which gives me until next Wednesday.

Respectfully yours,

STEVEN K. SANDERS & ASSOCIATES, LLC


Steven K. Sanders

cc:     Dr. Allahverdi, via fax only